**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **JEFFREY J. BOGART** | ) | Case No. 11-19089-BFK |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | **NOT FOR PUBLICATION IN WEST'S** |
| | ) | **BANKRUPTCY REPORTER** |

**MEMORANDUM OPINION**

This matter comes before the Court on the Motion of creditors George and Judith Bowns to dismiss this bankruptcy case pursuant to Bankruptcy Code Section 707(b). Docket No. 11. More specifically, the Bowns assert that this case should be dismissed under Section 707(b)(3), arguing that the totality of the circumstances of the case demonstrates an abuse. For the reasons stated below, the Court will deny the Motion.

**Findings of Fact**

1.      The Debtor filed this bankruptcy case under Chapter 7 of the Bankruptcy Code on December 22, 2011.

2.      The Bowns are the Debtor's former landlord.

3.      The Debtor filed the bankruptcy case primarily in response to a lawsuit filed by the Bowns against him in the Circuit Court of Fairfax County.

4.      In their lawsuit, the Bowns claimed that the Debtor defaulted under their lease with him. The Bowns claimed that the Debtor owed them $63,432 in back rent, plus $809 in property damages. The Bowns further claimed that the Debtor converted a $2,300 check that

1

they delivered to him, which allegedly was designated for the payment of homeowners' association dues. In addition, the Bowns claimed that the Debtor, in failing to notify the Bowns of pending litigation, was responsible for a $5,024 judgment that was entered against them. Finally, the Bowns asserted that they were entitled to $360,000 in punitive damages.[1] In all, the Bowns claimed in their lawsuit that the Debtor was obligated to them in the amount of $431,565. Debtor's Ex. F.

5. After the parties had some initial settlement discussions – which did not result in a settlement – the Debtor decided that he could no longer afford to fight the lawsuit, and he filed his bankruptcy petition in this Court.

6. The Debtor lives in the basement of his sister's house, for which he pays $600 per month. The Debtor testified that this less-than-market rental arrangement allows him to make the payments to his fiancée, described below.

7. The Debtor works as a commercial real estate leasing agent. The Debtor was the company's top commercial leasing agent in 2010. He was made a director in 2012.

8. The Debtor's income is based entirely on commissions. In 2009, the Debtor's gross income was $46,023. Debtor's Ex. J. In 2010, it was $160,944. Debtor's Ex. K. In 2011, the Debtor had $126,011 in gross income. Debtor's Ex. L.

9. The Debtor testified that, so far in 2012, he has had no income because he has not signed any leases. He has taken advances of $21,000 from his employer, which he is obligated to repay out of any future commissions that he earns (or if he leaves the company, to repay this amount in full).

---

[1] The cap on punitive damages under Virginia law is $350,000. Va. Code § 8.01-38.1.

10. The Debtor was divorced in 2001. He has one son from that marriage, who is now an adult, and who finished college in 2011.

11. The Debtor now has a fiancée in Costa Rica. He met her in May 2005. They are engaged. The Debtor's fiancée has three children. They are not the Debtor's children. The Debtor has been regularly paying his fiancée $1,600 per month since 2005. These payments support the Debtor's fiancée and her three children.

12. The Debtor did not, in his Statement of Financial Affairs, list the support payments to his fiancée, neither as "gifts" (SOFA, Question 7), nor as "other transfers" (SOFA, Question 10). Debtor's Ex. A, Statement of Financial Affairs. He did, however, list the $1,600 per month payments as "contribution[s] to fiancée," on his Schedule J. *Id.* at Schedule J.

13. For purposes of his means test (Form B22-C), the Debtor listed himself and his son, as a dependent. *Id.* at Form B22-C.

14. The Debtor listed $11,937 in priority debt owed to taxing authorities on his Schedule E. *Id.* at Schedule E.

15. Putting aside the Bowns' claims, the Debtor's unsecured debts are relatively modest. Other than the Bowns' claims, the Debtor listed $18,165 in unsecured debts on Schedule F. *Id.* at Schedule F. The Bowns suggest that many of these debts are barred by the applicable statutes of limitations.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District of August 15, 1984. This is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The Fourth Circuit recently addressed the factors to be considered in a Section 707(b)(3) totality of the circumstances case. *Calhoun v. United States Trustee (In re Calhoun)*, 650 F.3d 338 (4th Cir. 2011). Specifically, the Fourth Circuit rejected the Debtors' argument that the means test of Bankruptcy Code Section 707 is the sole method of determining abuse, noting:

> The means test [11 U.S.C. §§ 707(b)(1) and (2)] provides a formula by which a court can presume abuse on the part of above-income debtors and dismiss their case on that basis. The means test is not conclusive, the presumption is rebuttable, and a court may still find abuse even if there is no presumption.

*Id.* at 342. Further, the Fourth Circuit cited the case of *Green v. Staples (In re Green),* 934 F.2d 568 (4th Cir. 1991), for a discussion of the following non-exclusive factors in deciding whether there is an abuse under Section 707(b)(3):[2]

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.* at 341 n.2.

The Fourth Circuit did not, however, explicitly adopt the *Green* factors. *See id.* at 342 ("We need not make a determination as to the enduring applicability of the holding in *Green*."). Nevertheless, the factors in *Green* "remain informative." *In re Sonntag*, No. 10-1749, 2012 WL

---

[2] In October 2005, the pre-BAPCPA term "substantial abuse" was changed to "abuse," as a result of the BAPCPA amendments.

1065482, at *3 (Bankr. N.D. W.Va. Mar. 28, 2012) (collecting post-BAPCPA cases still relying on the *Green* factors).

Here, the Bowns make a number of claims as to why this bankruptcy case should be dismissed as abusive. The Court will address each claim, in turn.

    *1. The $1,600 per Month Payments to the Debtor's Fiancée in Costa Rica.*

The Bowns' primary argument is that the Debtor's monthly payment of $1,600 to his fiancée, for her support and the support of her three children, comes within the meaning of an "excessive or unreasonable" family budget, per the *Green* case cited above. Put differently, the Bowns argue that, if the Debtor were not paying support to his fiancée, there would be an ability to repay a significant portion of their debt. It is true, as urged by the Bowns, that the Debtor is under no legal obligation to make this monthly payment to his fiancée.

"The ability to repay creditors is generally evaluated by the amount a debtor would be able to commit to a hypothetical Chapter 13 plan." *In re Sonntag*, 2012 WL 1065482, at *4. A debtor's income and expenses in Schedules I and J are used to determine the amount the debtor can commit to his or her Chapter 13 plan. In this case, the Debtor's Schedules I and J show a negative $466 in monthly net income. Debtor's Ex. A, Schedules I and J. If the $1,600 deduction were disallowed, the Debtor would have positive monthly income of $1,134. However, the Debtor testified that he was paying the very modest amount of $600 to live in his sister's home in order to be able to afford the monthly payments to his fiancée. *See* Debtor's Ex. A, Schedule J. If he were not permitted to pay his fiancée the $1,600 per month, he would be entitled to move into his own home, and the Debtor's monthly net income of $1,134 would be largely offset by an increase in the Debtor's legitimate housing expenses. The IRS Local Standards' Maximum Monthly Allowance for housing and utilities for the Debtor's place of

5

residence, Prince William County, Virginia, is currently $2,227.[3]  (The Court notes that the Debtor's Lease with the Bowns was for $3,500 per month.  Debtor's Ex. E.)  This Maximum Monthly Allowance is $1,627 more than the Debtor's current rent payment to his sister.  The Debtor in this case claimed "0.00" for Electricity and Heating Fuel and "0.00" for Water and Sewer on his Schedule J.  Docket No. 1.  The only utility charge claimed by the Debtor on Schedule J is $180 for his phone, which the Bowns did not challenge as being unreasonable.  Adding the phone expense back in (the IRS Local Standards provide that the Maximum Monthly Allowance includes residential and cell phone service), this would constitute a difference of $1,447 between what the Debtor is now paying and deducting ($600 + $180 = $780) and what he would be allowed under the Local Standards for housing and utilities ($2,227).  In other words, this would yield a difference of only $153 per month between what the Debtor pays to his fiancée in support ($1,600) and the aforementioned differential of $1,447.  The Debtor's monthly expense of $1,600 to his fiancée is made less objectionable under the totality of the circumstances by the Debtor's conscious choice to live a more frugal lifestyle in order to make the support payments, especially because these payments would be offset (largely, if not entirely) by increased housing expenses were the Debtor forced into a Chapter 13.

      This is not a situation where the Debtor is hiding assets, living a lavish lifestyle, nor investing the money on a monthly basis in property that is undisclosed to the Trustee and the creditors.  Rather, the Debtor is simply helping to support his fiancée and her dependents.  He has been doing so consistently, for years preceding the bankruptcy case.  There is no tangible financial benefit to the Debtor in making these payments.

---

[3] *See Virginia – Local Standards:  Housing and* Utilities, IRS.gov, http://www.irs.gov/businesses/small/article/0,,id=104822,00.html (last visited August 30, 2012).

The Court finds that, under the totality of the circumstances, the Debtor's payment of $1,600 per month to his fiancée, for her support and that of her dependents, does not represent an abuse of the bankruptcy system.

   *2. The Alleged Concealment of the $1,600 Payments per Month.*

The Debtor did not list the $1,600 monthly payments in his Statement of Financial Affairs, neither in Question 7, nor in Question 10. *See* Debtor's Ex. A, Statement of Financial Affairs. He did, however, list the payments on his Schedule J as ongoing monthly payments. *Id.* at Schedule J. Although the payments should have been listed in the Statement of Financial Affairs, the Court cannot find that the Debtor intended to conceal the payments. In listing the payments on Schedule J, the Debtor put the Bowns on notice that the payments were being made.

Accordingly, the Court finds that the Debtor did not intend to conceal the monthly payments to his fiancée.

   *3. The Use of the Debtor's Son as a Dependent on Form B22-A.*

Section 6(a) of the Debtor's Custody, Support and Property Settlement Agreement, which Agreement was incorporated into his Final Decree of Divorce, provides as follows:

> Jeff and Lori agree to assist Allen with his post-high school education to the extent of a four year undergraduate course at a state supported institution of higher education. This legal obligation shall be limited to his actual net costs of in-state tuition, room and board, books and other regular fees at such an institution. The parties shall share the responsibility for these expenses through the educational fund set up as provided below in this section. To the extent that this fund is not sufficient to cover the above expenses, Jeff shall be responsible for such uncovered expense unless Lori has remarried, in which case they shall be shared equally between the parties.

Debtor's Ex. D, p. 6.

Similarly, Section 14(b) of the Agreement provides, with respect to the allocation of tax benefits relating to the parties' (then) minor son, as follows:

> For so long as neither of the parties has remarried, they shall cooperate to adjust the schedule so that they can legitimately alternate the head of household tax exemption from year to year on their future separate income tax returns. The party who claims head of household status for a given tax year shall assign the tax exemption for Allen to the other party for that tax year, using IRS Form 8233 or any other appropriate form.

*Id*. at pp. 11-12.

The Debtor testified that, in 2011, he was supporting his son while the son was at college. The Debtor testified that, in the six months preceding the filing of the bankruptcy case, he paid approximately $2,600 in cash, and another $600 in living expenses (food, etc.), to his son, or for his son's benefit. The Bowns seemed to be of the understanding that the Debtor's son had already graduated from college, and that he no longer needed his father's support. This is true, but only of late. The Debtor's son graduated in 2011. The Debtor will not be able to claim his son as a dependent for 2012. However, the claim of dependency for 2011 is real, and is legitimate. *See* Debtor's Ex. L (claiming the son as a dependent on the Debtor's 2011 Form 1040 Income Tax Return, line 6(c)). The Debtor's use of his son as a dependent for purposes of the means test is not an abuse.

It is true that the Debtor no longer has these expenses going forward, as his son has graduated from college. However, it must be remembered that Chapter 7 is more of a "snapshot" of assets and liabilities, and expenses going forward are not as relevant as they are in a Chapter 13 case. *In re Grinkmeyer*, 456 B.R. 385, 388 (Bankr. S.D. Ind. 2011) ("only in the context of a chapter 13 proceeding is the concept of PDI [projected disposable income] relevant").

    4.  *The Alleged Listing of Debts that Appear to be Barred by Limitations.*

Finally, the Bowns claim that the Debtor abused the bankruptcy system by listing debts in Schedule F that are barred by the statute of limitations. This is not an abuse of the system. Any

good debtor's attorney knows that it pays to be over-inclusive in listing debts. Debtors' attorneys cannot be expected to know the statute of limitations in every State in which debts are contracted, and they cannot reasonably be expected to research these issues at the outset in an ordinary consumer bankruptcy case. Rather, if there is any doubt, the debt should be listed. That is what happened here.

## Conclusion

The Debtor filed his bankruptcy case in the face of a lawsuit demanding $431,565; a lawsuit that, for whatever reason, he was not able to settle. Although this is not a situation where the Debtor was forced to file for bankruptcy as a result of a sudden illness or calamity, the Debtor chose to file for bankruptcy rather than pay mounting legal fees to fight the Bowns' lawsuit. This is not a situation where the Debtor has concealed property. The Debtor's claim of exemptions is fairly modest, and not extravagant. Debtor's Ex. A, Schedule C.

The questions surrounding the Debtor's monthly payment of $1,600 to his fiancée are legitimate, but they have been met with honest answers. This is not a situation where the Debtor is living a lavish lifestyle at the expense of his creditors. The Debtor has been paying $1,600 to his fiancée for years, and did not begin these payments in anticipation of filing for bankruptcy. The Debtor lives in his sister's basement, for which he pays $600 per month. He supported his son while the son attended a public university. He owns two cars, one a 1999 Mercedes with 250,000 miles on it, and the other a 2004 Saturn with 64,000 miles. Debtor's Ex. A, Schedule B. He does not appear to owe any domestic support obligations to his ex-wife.

The Court finds that this is not a case that represents an abuse of the bankruptcy system.

The Bowns' Motion to Dismiss will be denied. A separate Order shall issue.


Date: _____

Alexandria, Virginia

Brian F. Kenney
United States Bankruptcy Judge


Copies to:

Jeffrey J. Bogart
P.O. Box 45
Occoquan, VA 22125
Debtor

Joseph M. Goldberg, Esquire
Ammerman & Goldberg
1115 Massachusetts Ave., NW
Washington, DC 20005
Counsel for the Debtor

Douglas E. McKinley, Esquire
P. O. Box 7395
Alexandria, Virginia 22307-1825
Counsel for the Bowns

Gordon P. Peyton, Esquire
Redmon. Peyton & Braswell
510 King Street, Suite 301
Alexandria, VA 22314
Chapter 7 Trustee